**Michael LADELE, individually and on behalf of all others similarly situated**

v.

**CONSOLIDATED RAIL CORPORATION.**

**Civ. A. No. 80–2464.**

United States District Court,
E. D. Pennsylvania.

Sept. 3, 1982.

Harry J. Sher, Philadelphia, Pa., for plaintiff.

Lorraine C. Staples, Philadelphia, Pa., for defendant.

## MEMORANDUM

GILES, District Judge.

Plaintiff has moved for certification of a class in an employment discrimination case. For the following reasons, his motion shall be denied.

Plaintiff, a black male, instituted this action against Consolidated Rail Corporation ("Conrail"), individually and on behalf of a class of persons similarly situated, alleging that Conrail has engaged in various racially discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1976 and Supp IV 1980) and the Civil Rights Act of 1866, 42 U.S.C. § 1981 (1976)[1]. Plaintiff seeks damages and injunctive relief.

Plaintiff held a salaried, white-collar position as vehicle specifications engineer in the automotive section of Conrail's Philadelphia Materials and Purchasing Department until his termination on May 8, 1979. The position was not covered by a collective bargaining agreement.[2]

Plaintiff's individual allegations against Conrail are that he was: (1) harassed for failing to meet management requirements; (2) given undesirable work assignments and excessive supervision; (3) relocated among work assignments; (4) ridiculed and humiliated by his supervisors and fellow employees; (5) discriminated against in promotions and salary increases; (6) denied access to established discharge procedures; (7) unfairly terminated by defendant on pretextual grounds; (8) compensated differently from others; and (9) victimized by other unspecified discriminatory conduct.

Plaintiff moves for certification of a class under Federal Rule of Civil Procedure 23(a) and either 23(b)(2) or 23(b)(3). The proposed class would include all blacks (1) currently employed by defendant in the United States, (2) those employed by defendant between July 2, 1965 and the present time but who are no longer so employed, and (3) those who unsuccessfully sought employment with defendant at any time between July 2, 1965, and the present time. Plaintiff's class allegations accuse Conrail of discriminatory hiring, promotion, compensa-

---

1. Plaintiff also asserted violations of the Thirteenth and Fourteenth Amendments to the United States Constitution and asserted a pendent state defamation claim. These claims were dismissed on September 9, 1980 pursuant to Conrail's partial motion to dismiss. This court has jurisdiction of plaintiff's remaining claims under 28 U.S.C. § 1343(4) (Supp. IV 1980).

2. The uncontradicted affidavit of Thomas J. O'Donnell, Manager-Equal Employment for Conrail, also establishes that plaintiff was never a member of a labor organization while at Conrail.

tion, training, and termination practices.[3] Defendant contests plaintiff's motion for class certification on the ground that plaintiff has failed to meet the prerequisites of Rule 23(a).

■ The party seeking to utilize the class action mechanism has the burden of demonstrating that the mandatory requirements of Rule 23(a) are met. *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3d Cir. 1975), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Bartelson v. Dean Witter & Co.*, 86 F.R.D. 657 (E.D. Pa. 1980); *Harrison · v. Simon*, 91 F.R.D. 423 (E.D. Pa. 1981). Rule 23(a) provides that a member of a class may sue as its representative only if four factors are present: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.[4] In addition to these prerequisites, plaintiff must establish that one of the subparts of Rule 23(b) has been satisfied.[5]

Plaintiff accurately observes that in the context of civil rights litigation some courts have liberally construed or relaxed the requirements of Rule 23 to permit class actions. However, the United States Supreme Court has recently made it clear that even in Title VII cases, an individual seeking class certification cannot avoid the mandatory requirements of Rule 23(a). Accordingly, trial courts must carefully scrutinize the class certification petition to be sure the prerequisites are met. *General Telephone Co. of the Southwest v. Falcon*, —— U.S. ——, ——, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982). *See also Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3d Cir. 1975), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). This does not mean that a plaintiff must establish his case on the merits before a preliminary determination of the class action is made. However, plaintiff must set forth sufficient factual information to enable the court reasonably to permit the action to continue as a class action under Rule 23. *Harrison v. Simon*, 91 F.R.D. at 429.

3. Specifically, plaintiff's class allegations are that defendant: (1) failed to validate pre-employment tests and discriminated on the basis of race in both the interview and test stages of the application process; (2) failed to affirmatively recruit and employ blacks; (3) failed to remedy the effects of racially discriminatory hiring and promotional practices in existence prior to enactment of the Civil Rights Act of 1964; (4) failed to place blacks in the operating departments of the company or to employ black males in management areas; (5) failed to provide job training for blacks similar to that received by whites; (6) failed to provide blacks with compensation comparable to that received by whites; (7) failed to retain and/or promote black employees at the same rate as white employees; (8) terminated black employees because of race; and (9) failed to pay black employees, as compared with white employees, equal wages for equal work.

4. Fed. R. Civ. Pro. Rule 23(a) reads:
(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

5. In pertinent part, Rule 23(b) reads:
(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In moving for class certification, plaintiff relies upon an "across-the-board" theory. Originally articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122 (5th Cir. 1969) and subsequently recognized and approved by the Third Circuit in *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d at 247, this theory allows the representative plaintiff in a Title VII class action to challenge a wide range of employment practices alleged to result from a common policy or pattern of discrimination and "to rectify the various forms in which the discrimination is manifested." *Bartelson v. Dean Witter & Co.*, 86 F.R.D. at 662. Recognizing that many different employment practices may emanate from a broad, company-sponsored policy of discrimination, the theory eases somewhat the commonality and typicality requirements of Rule 23(a) and allows the named plaintiff to represent all those affected by the company-wide policy, whether or not they suffer from the particular form of discrimination experienced by plaintiff. *See, e.g., Alexander v. Gino's, Inc.*, 621 F.2d 71, 75 (3d Cir.), *cert. denied*, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980); *Black Grievance Committee v. Philadelphia Electric Co.*, 79 F.R.D. 98 (E.D. Pa. 1978); *Presseisen v. Swarthmore College*, 71 F.R.D. 34, 42–43 (E.D. Pa. 1976).

In *General Telephone Co. v. Falcon*, the United States Supreme Court disapproved the across-the-board approach in Title VII class actions to the extent that application of the theory results in presumed and not actual compliance with the requirements of Rule 23(a). There, respondent, a Mexican-American, filed a complaint on his own behalf and on behalf of a class alleging that petitioner, his employer, maintained a policy of national origin discrimination against Mexican-Americans with respect to compensation, terms, conditions and privileges of employment. The gravamen of his individual complaint was that he was denied promotion in favor of qualified whites. The complaint contained no factual allegations concerning the employer's hiring practices, yet, relying upon an across-the-board theory of discrimination, he sought to represent a class of all past, present and future hourly Mexican-American employees as well as all unsuccessful Mexican-American applicants.

The district court certified the proposed class, apparently without testing the petition for certification against the prerequisites of Rule 23(a). Following trial of the liability issues, the district court found that respondent had not suffered hiring discrimination but had suffered discrimination in promotions. It reached the reverse conclusions about the class. On appeal, the Fifth Circuit affirmed, thereby approving the across-the-board approach in Title VII cases.

The Supreme Court reversed the Circuit Court and remanded. It noted that Title VII contains "no special authorization for class suits maintained by private parties." *Id.* at ——, 102 S.Ct. at 2370. Therefore, individual litigants seeking to maintain class actions must comply with Rule 23(a) requirements which " 'limit the class claims to those fairly encompassed by the named plaintiff's claims.' " *Id.* (quoting *General Telephone Co. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980)). While the court "did not disagree" with the underlying justification for an across-the-board approach in a proper case, *i.e.*, that race discrimination is by definition class discrimination, *id.* at ——, 102 S.Ct. at 2371, it stated that,

> the allegation that such discrimination has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified. Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims.

*Id.* at ——, 102 S.Ct. at 2371 (footnote omitted).

The Court found that the trial court erred in presuming that the plaintiff's claim was typical of the class claims. For the plaintiff to bridge the gap, the Court found that he had to prove more than the validity of his individual claim. Certainly, denial of promotion in favor of less qualified whites could support an allegation of national origin discrimination. However, the Court found that such an allegation did not support the additional inferences that

(1) that this discriminatory treatment is typical of petitioner's promotion practices, (2) that petitioner's promotion practices are motivated by a policy of ethnic discrimination that pervades petitioner's [place of employment], or (3) that this policy of ethnic discrimination is reflected in petitioner's other employment practices, such as hiring, in the same way it is manifested in the promotion practices. These additional inferences demonstrate the tenuous character of any presumption that the class claims are 'fairly encompassed' within respondent's claim.

*Id.* at ——, 102 S.Ct. at 2371.

■ In light of this reasoning, a trial court must be satisfied that there is actual and not presumed compliance with Rule 23(a) prerequisites. A proposed class representative must provide a sufficient basis to support the conclusion that the class claims are "fairly encompassed" with the named representative's claims.

Even prior to *General Telephone Co. v. Falcon,* the Third Circuit had articulated a conservative, two-step approach to Title VII class certification petitions in *Alexander v. Gino's, Inc.,* 621 F.2d 71 (3d Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980).

[B]efore the across the board approach can apply, there still must be some class that satisfies all four requirements of rule 23(a). The crux of that approach is that once a class is properly certified, some of the requirements of rule 23(a) may be relaxed to consider claims that might not satisfy all four elements of rule 23(a). The broadening may not obscure, however, the need to have some class that satisfies the mandatory requirements of rule 23(a).

*Id.* at 75.

■ Applying the rigorous analysis mandated by *General Telephone Co. v. Falcon* and *Alexander,* I find that plaintiff has not satisfied the commonality and typicality requirements of Rule 23(a).[6] With respect to that portion of the putative class consisting of rejected applicants a substantial barrier is presented by the requirements of commonality and typicality. Plaintiff, who obviously was hired, has individual claims which challenge defendant's supervision, compensation, promotion and termination practices. *See* text following note 2 *supra.* These bear neither legal nor factual similarity to the claims of a rejected applicant

---

**6.** The commonality prerequisite requires the representative to show that there are some questions of law or fact common to the putative class, although not all questions need be common. *Bartelson v. Dean Witter & Co.,* 86 F.R.D. 657, 666 (E.D. Pa. 1980). *Cf. Karan v. Nabisco, Inc.,* 78 F.R.D. 388, 403 (W.D. Pa. 1978) (common questions need not predominate, but they must be substantial.) Typicality for purposes of Rule 23(a) requires that there be a nexus between plaintiff's claims and those of the proposed class members. *Bartelson,* 86 F.R.D. at 668. This latter requirement guards against the possibility that a unique representative will direct the focus of the litigation to his own claims at the expense of the class. *Karan,* 78 F.R.D. at 405. In a Title VII action, typicality may be satisfied by a showing that the representative and the class members were exposed

to similar conditions of employment, were subjected to similar patterns of discrimination and seek similar relief. *Hannigan v. Aydin Corp.,* 76 F.R.D. 502, 508 (E.D. Pa. 1977).

As the court noted in *General Telephone Co. v. Falcon,* "[t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. v. Falcon,* —— U.S. at —— n. 13, 102 S.Ct. at 2371 n. 13.

Under the facts of this case, I find that the commonality and typicality requirements merge.

challenging recruitment, testing and placement practices.

Plaintiff's individual claims, especially his claim that he was not promoted and was differently compensated due to race, are likely to involve a comparative analysis of plaintiff's qualifications in relation to those of other employees, as well as an evaluation of the reasons advanced for the allegedly differential treatment of plaintiff. On the other hand a claim on behalf of unsuccessful applicants for employment is likely to involve statistical analysis of defendant's hiring practices. *See General Telephone Co. v. Falcon,* —— U.S. at ——, 102 S.Ct. at 2373 (Burger, C. J., concurring in part and dissenting in part). Plaintiff's complaint does not allege any basis whatsoever for concluding that adjudication of his individual claims will share common questions of law or fact with the portion of the proposed class consisting of rejected applicants or that his claims will be typical of that portion of the class.[7]

Eliminating from the class those persons never employed by Conrail, the putative class is reduced to a nationwide class of all blacks currently employed by Conrail and those blacks employed between July, 1965 and the present. When as here, a plaintiff initiates a broad-based attack alleging generalized discrimination in a variety of employment practices against a nationwide class, to establish commonality, he must at least present evidence from which the court

may infer that the alleged policies are practiced throughout the organization. *Harrison v. Simon,* 91 F.R.D. at 430 (citing *Hannigan v. Aydin Corp.,* 76 F.R.D. 502, 507–08 (E.D. Pa. 1977). For example, it may be reasonable to infer that the discrimination suffered by plaintiff was not isolated if: (1) there was evidence that a central administration knew of the discriminatory practices, and permitted them to continue; (2) there was statistical evidence of a consistent, system-wide pattern or; (3) similar charges were made by other employees, *Karan v. Nabisco, Inc.,* 78 F.R.D. 388, 404 (W.D. Pa. 1978); *Webb v. Westinghouse Electric Corp.,* 78 F.R.D. 645, 650 (E.D. Pa. 1978).[8]

No such evidence has been provided here. The only information submitted by plaintiff regarding the defendant's national employment situation is that the defendant employs approximately 80,000 workers. Plaintiff's Brief in Support of Motion for Class Action Determination at 11. No information has been offered concerning the number, size or location of defendant's facilities. Nor has plaintiff directed the court's attention to any information indicating to what degree nationwide employment conditions and practices are centrally controlled. Furthermore, no allegation has been made that charges similar to plaintiff's have been made by other Conrail employees, whether they be located in Philadelphia or else-

---

**7.** Courts in this circuit have held that an employee may represent an applicant class, even though no affirmative allegations were made as to the named plaintiff's hiring. *See, e.g., Bartelson v. Dean Witter & Co.,* 86 F.R.D. at 672; *Gramby v. Westinghouse,* 84 F.R.D. 655 (E.D. Pa. 1979). However, these cases preceded *General Telephone Co. v. Falcon,* a case which favors a restrictive view of the typicality/commonality requirements when a named representative, who has not suffered unsuccessful hiring discrimination, seeks to represent a class of applicants.

**8.** Even prior to *General Telephone Co. v. Falcon* and *Alexander,* courts in this circuit which considered the commonality requirement in across-the-board Title VII cases, generally required plaintiff to identify some reasonable basis for concluding that the alleged unlawful discrimination was practiced company-wide

and not on an individual basis. *Bartelson v. Dean Witter & Co.,* 86 F.R.D. at 666 (facts supporting allegation of company-wide discrimination required); *Kuhn v. Philadelphia Elec. Co.,* 80 F.R.D. 681, 684 (E.D. Pa. 1978) (allegations of across-the-board discrimination in hiring, promotion, and salary when coupled with showing of centralized control over such decisions satisfies commonality); *Black Grievance Comm. v. Philadelphia Electric Company,* 79 F.R.D. at 106 (commonality satisfied where discrimination is company-wide); *Karan v. Nabisco, Inc.,* 78 F.R.D. at 404 (to establish commonality plaintiff must identify reasonable basis for believing that challenged policy was applied to whole class). *Hannigan v. Aydin Corp.,* 76 F.R.D. at 507–08 (commonality satisfied if plaintiff sets forth facts sufficient to support the allegation of company-wide discrimination).

where. Indeed, plaintiff has failed to identify a single instance of discrimination at Conrail, other than his own. Very simply, plaintiff cannot support a nationwide class on the bare allegation that Conrail employs 80,000 employees nationwide.

The nearly complete absence of supporting national data may not be attributed to a lack of opportunity to discover relevant information. Plaintiff's complaint was filed on June 24, 1980; his motion for certification was filed almost five months later, on November 21, 1980. Adequate opportunity therefore existed for development of the necessary factual background.[9]

Furthermore, there is no evidence that plaintiff's claims are typical of the class. Defendant has provided affidavits which establish that Conrail employs persons nationally who are subject to collective bargaining agreements ("agreement employees") as well as those who are not subject to these agreements ("non-agreement employees"). Conrail's agreement employees belong to 26 different labor organizations with 138 separate collective bargaining agreements. Affidavit of Joseph R. Walsh. Those collective bargaining agreements govern job training, promotion, compensation and discharge procedures for the employees subject to their provisions. *Id.* In contrast, plaintiff was never subject to a collective bargaining agreement. Nor has he identified any facts from which this court could conclude that plaintiff's claims as a non-agreement, non-union employee are typical of the claims of the putative class members who are subject to collective bargaining agreements. After *General Telephone Co. v. Falcon*, the bare allegation of race discrimination is insufficient to establish typicality.

The only specific information presented by plaintiff concerns Conrail's Philadelphia Materials and Purchasing Department (hereinafter PMPD). Plaintiff asserts that in 1980 the department employed only 7.7%

blacks (7 out of 91) while the black labor force in Philadelphia County comprises 33.8% of the total labor force. He also asserts that of the fifty-six department promotions, only four were blacks, and that there are a number of managerial job categories in which blacks have never held jobs.

These statistics alone do not provide a reasonable basis from which this court may infer that Conrail's PMPD has a policy of discrimination with regard to the employment practices challenged. Absent evidence that qualified blacks, other than plaintiff, applied for and were denied promotion or that qualified blacks were not selected for the managerial job categories in question, plaintiff cannot assert that the small number of promotions or the absence of blacks in certain job categories, of itself, constitutes evidence of discrimination based on race in the PMPD.

Even if plaintiff could satisfy the commonality and typicality requirements in a class consisting of former and present black employees in the PMPD, the numerosity requirement would not be satisfied. In defendant's answers to plaintiff's interrogatories, it stated that seven black male employees were in that Department as of August 1, 1980. Plaintiff has not supplied the court with information to indicate that a greater number of employees is involved. A class of eight would not satisfy the numerosity requirement in this case. *General Telephone Co. v. EEOC*, 446 U.S. at 330, 100 S.Ct. at 1706 (dictum—class numbering 15 would not satisfy numerosity); *Harrison v. Simon*, 91 F.R.D. at 431. (Classes numbering ten and eleven did not warrant certification.)

As stated above, *General Telephone Co. v. Falcon*, makes it clear that the bare allegation of race discrimination will not support a class action. Plaintiff must present specific facts identifying the questions of law and fact common to the class and demon-

---

**9.** Plaintiff argues that defendant has prevented him from discovering relevant national data by unilaterally limiting discovery to information regarding non-agreement male employees in the Philadelphia Materials and Purchasing De-

partment. However, I note that even if Conrail did so limit its responses, plaintiff has never objected to these responses, nor filed any follow-up discovery.

strating that the claims are typical of the class. He has failed to do so in this case.[10]

Accordingly, plaintiff's motion for class certification is denied.

---

10. In view of the court's decision that the requirements of Rule 23(a) have not been satisfied, I do not address the question of whether plaintiff has satisfied the requirements of Rule 23(b)(2) or 23(b)(3).